[Civ. No. 14574. Fourth Dist., Div. One. Dec. 23, 1976.]

JUANITA A. MORRISON, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent;
STUDIO-GIRL-HOLLYWOOD, INC.,
Real Party in Interest and Respondent.

**COUNSEL**

Rosella M. Leasure for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and William R. Winship, Jr., Deputy Attorney General, for Defendant and Respondent.

Greenberg, Bernhard, Weiss & Karma, Herbert A. Bernhard and Robert S. Ackerman for Real Party in Interest and Respondent.

## OPINION

WHELAN, J.*— Juanita A. Morrison has appealed from a judgment of the superior court denying her petition for writ of mandate directed to the California Unemployment Insurance Appeals Board (Board).

Board had denied Morrison's application for unemployment insurance benefits on the ground she had voluntarily quit her employment without good cause. Morrison took the appropriate administrative steps before seeking the writ of mandate.

Studio-Girl-Hollywood, Inc. (Studio Girl) is the real party in interest. It is engaged in the sale and distribution of cosmetics and related merchandise, nation-wide.

The petition for writ of mandate (Code Civ. Proc., § 1094.5) alleged that Morrison terminated her employment because of discrimination against her in her employment based upon her sex. More precisely the discrimination was in a substantial difference in salary for services of equal value, unfavorable to Morrison. Board's return to the alternative writ admitted such discrimination but denied that under the circumstances it afforded good cause for voluntary termination by an employee.

The return of the real party in interest consisted of a demurrer to the petition.

The following findings of fact made by the trial court set out the factual background necessary to our decision:

"I. Petitioner was employed by Studio Girl Hollywood, Inc., the real party in interest herein, for approximately 12 years prior to her last day of employment on July 31, 1973.

"II. At some time prior to July 31, 1973, petitioner became aware of disparities in the pay and allowances as between herself and certain other male employees doing similar or subordinate work.

"III. Petitioner made repeated oral requests to her immediate supervisor for a raise in conformity with the male employees doing the same or

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

similar work. Petitioner also pointed out to her supervisor alleged violations of state and federal law in the payment of unequal wages based on sex.

"IV. In March, 1973, petitioner communicated her intent to resign from Studio Girl Hollywood, Inc. because of the unequal pay situation and because her employer indicated no raise to parity would occur. At all times petitioner was expected to perform her work in the same manner as certain other male employees receiving higher wages.

"V. On April 30, 1973, petitioner submitted a written statement of resignation to be effective no later than August 2, 1973. On July 31, 1973, petitioner was terminated as a regular employee although petitioner worked from August 6, 1973 to August 17, 1973 in a different capacity than as a regular employee.

"VI. In addition, on July 5, 1973, petitioner filed a charge with the Equal Employment Opportunity Commission based on the unequal pay and disparity of wages as between herself and certain other male employees doing the same or subordinate work. Petitioner, after resignation, also filed charges with the Fair Employment Practices Commission. At the time of petitioner's resignation from employment with Studio Girl Hollywood, Inc., no resolution of the charges filed had occurred and the grievance initiated by petitioner was still in progress when petitioner voluntarily left her employment.

"VII. On November 8, 1973, petitioner filed an application for unemployment compensation benefits with the Employment Development Department. Petitioner gave the following reasons for her application:

" 'Resigned—unequal pay with male peer.'

"VIII. Petitioner's employer submitted the following reason for petitioner's separation:

" 'Resigned to pursue college education and to enter own free lance business to support herself.' "

We hold that in the factual situation thus presented Morrison had good cause to quit her employment voluntarily when she did.

Decision involves consideration of the provisions of the California Unemployment Insurance Code, the California Labor Code, comparable federal statutes, and relevant judicial treatments of those statutes.

California Unemployment Insurance Code (U.I.C.) section 100 provides in part:

"The Legislature . . . declares that in its considered judgment the public good and the general welfare of the citizens of the State require the enactment of this measure under the police power of the State, for the compulsory setting aside of funds to be used for a system of unemployment insurance providing benefits for persons unemployed through no fault of their own, and to reduce involuntary unemployment and the suffering caused thereby to a minimum.

"It is the intent of the Legislature that unemployed persons claiming unemployment insurance benefits shall be required to make all reasonable effort to secure employment on their own behalf."

California Unemployment Insurance Code section 1256 provides in part: "An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work."

California Labor Code section 1197.5 provides in part:

"(a) No employer shall pay any individual in his employ at wage rates less than the rates paid to employees of the opposite sex in the same establishment for the same quantity and quality of the same classification of work; provided, that nothing herein shall prohibit a variation of rates of pay for male and female employees engaged in the same classification of work based upon a difference in seniority, length of service, ability, skill, difference in duties or services performed, whether regularly or occasionally, difference in the shift or time of day worked, hours of work, or restrictions or prohibitions on lifting or moving objects in excess of specified weight, or other reasonable differentiation, factor or factors other than sex, when exercised in good faith.

"(b) Any employer who violates subdivision (a) of this section is liable to the employee affected in the amount of the wages of which such employee is deprived by reason of such violation."

"(g) Any employee receiving less than the wage to which he is entitled under this section may recover in a civil action the balance of such wages, together with the costs of suit, notwithstanding any agreement to work for a lesser wage."

A similar provision is found in the Equal Pay Act of 1963. (29 U.S.C. § 206(d).)

Sex discrimination in employment in general is prohibited by Labor Code section 1411 et seq. Similar federal prohibition is found in section 2000e et seq. of 42 United States Code (Title VII).

U.I.C. section 1256 must be considered with relation to the other foregoing provisions.

■ Every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect (*Stafford* v. *L. A. etc. Retirement Board,* 42 Cal.2d 795, 799 [270 P.2d 12]).

■ We consider the narrow question whether discrimination in pay based upon sex, which is persisted in after communicated protest and after reasonable time and opportunity to eliminate the discrimination, affords good cause for the employee discriminated against to quit the employment. We hold that it does; we do not hold that past discrimination of that nature would alone provide such cause, even though not yet compensated for.

The burden will, of course, be on the employee to establish the existence of facts within our holding.

■ An employee who voluntarily leaves his work with good cause is involuntarily unemployed (*Cal. Portland Cement Co.* v. *Cal. Unemp. Ins. Appeals Board,* 178 Cal.App.2d 263, 273 [3 Cal.Rptr. 37]).

Such decisional authorities as there are on the general subject of sex discrimination as "good cause" are divided.

*Warriner* v. *Unemployment Ins. Appeals Bd.,* 32 Cal.App.3d 353 [108 Cal.Rptr. 153], supports the Board's position. In *Warriner,* an office supervisor who had been with the company for about nine years, two of

them as supervisor, gave notice of her intention to resign due to age; however, she was uncertain as to the date. She was then informed management had made a policy decision that in the future office supervisors would be male office managers, and that female supervisors would be replaced. About a year after she gave the notice she was asked to train a male replacement for herself, later learned the replacement, who had been with the company only six months, was receiving a higher salary than she was, and complained of that; her employer responded by increasing her salary from $155 per week to $164 per week, the level of her replacement. Her supervisor also indicated to her that he could "personally guarantee" her six more months of employment, an increase in salary to $175 per week, and an additional two-weeks vacation. He noted it would take her three to four months to train her replacement and that she might possibly stay with the company beyond the six-month guarantee. Shortly after she began training her replacement, she became "nervous and upset" about being replaced, having to train a replacement, and the degradation of the task. She voluntarily quit her employment and applied for unemployment benefits which were denied for lack of "good cause." She appealed, claiming she had left for good cause based upon sex discrimination. The Court of Appeal affirmed the department's decision, found Warriner's discharge was voluntary in nature since continued employment at a nondiscriminatory rate of pay was still available, and found that "good cause" for voluntary leaving did not exist in sex discrimination, as it stated:

"Assuming that the adoption of a policy to replace women supervisors with male 'office managers' did violate the provisions of Labor Code section 1410 et seq., the California Fair Employment Practice Act (a matter which we need not here determine), her remedy was to proceed by appropriate action to prevent the implementation of that policy and not to resign and seek unemployment compensation. The purpose of the Unemployment Insurance Code is set forth at length in section 100 of the Unemployment Insurance Code . . . .

" . . . . . . . . . . . . . . . . .

"It is obvious that the purpose of that act was purely economic—to provide temporary economic assistance to those who qualify under the act. An employee who, as was the case with petitioner, is still guaranteed full economic compensation by her employer does not show 'good cause' for rejecting that compensation because of reduction in title or because

of discrimination, legal or illegal." (*Warriner* v. *Unemployment Ins. Appeals Bd.*, 32 Cal.App.3d 353, 359-360 [108 Cal.Rptr. 153].)

*Prescod* v. *Unemployment Ins. Appeals Bd.*, 57 Cal.App.3d 29 [127 Cal.Rptr. 540], came to a contrary conclusion. In *Prescod,* the petitioner, after her return from a maternity leave of about three and one-half months, was first refused reinstatement, then rehired in a lower grade but with the same pay, and as a result later deprived of a promotional opportunity. She quit her employment. Denied unemployment benefits, she contended that as a matter of law she had left her employment, not "voluntarily," but for "good cause," as required by U.I.C. section 1256. The court reversed a judgment denying mandate and remanded it for a new trial de novo, citing *Warriner* as "unpersuasive" and "inconsistent" with existing law that the purpose of the Unemployment Act is not purely economic, but also remedial. In *Prescod,* the court commented, at page 41: "Surely, then, where one's work is made intolerable over a period of time by the discriminatory acts of the employer, such as the refusal to reinstate, demotion in grade and loss of promotional opportunity, as in the instant case, there is good cause for leaving employment. Assuring an individual unemployment benefits in such situations does insure them against the impact of leaving adverse working conditions not voluntarily created by them and thus comports with the purposes of the unemployment insurance laws."

An Oregon court, in *Fajardo* v. *Morgan,* 15 Ore.App. 454 [516 P.2d 495], confronted with a similar question, held that "good cause" in an Oregon statute substantially similar to section 1256 extended to the voluntarily quitting of her employment by a female claimant due to sex discrimination in regard to unequal pay. In *Fajardo,* before resigning the claimant sought to have the situation corrected by pointing out to her superiors what she considered to be unfair discrimination against her in the salary area. The Oregon court noted the existence of remedies under antidiscrimination legislation did not negate "good cause" when the claimant left instead of seeking a remedy under such legislation while gainfully employed by the discriminating employer.

Good cause for quitting employment other than by discharge has been held to exist where a wage cut of 25 percent was unilaterally imposed (*Bunny's Waffle Shop* v. *Cal. Emp. Com.,* 24 Cal.2d 735 [151 P.2d 224]; see also *Syrek* v. *California Unemployment Insurance Appeals Board,* 54 Cal.2d 519 [7 Cal.Rptr. 97, 354 P.2d 625], where an employee could not

conscientiously subscribe to a required loyalty oath; *King* v. *California Unemployment Ins. Appeals Bd.,* 25 Cal.App.3d 199 [101 Cal.Rptr. 660], where an employee was ordered to shave off his beard as a condition of continuing employment). (Also see *Sherbert* v. *Verner,* 374 U.S. 398 [10 L.Ed.2d 965, 83 S.Ct. 1790].)

In *Syrek* v. *California Unemployment Insurance Appeals Board, supra,* 54 Cal.2d 519, 529, "good cause" was defined by the Supreme Court as " '. . . an adequate cause, a cause that comports with the purposes of the Unemployment Insurance Code and with other laws.' "

An employee who is in fact discriminated against in the matter of compensation, because of sex, who makes appropriate protest and request for equalization of compensation, and who is refused such adjustment after the employer has had an opportunity to investigate and adjust said compensation, has good cause to leave that employment.

The existence of a claim by an employee based on past discrimination which has now ceased should not afford good cause to leave employment voluntarily. Methods are available for enforcing such a claim by legal process.

But the goading irritation of continuing unjust treatment by an employer can well have an eroding effect upon employer-employee relations which will manifest itself in the character of the employee's performance, even to the extent of giving good cause for the employee's discharge. The employee need not be subjected to that dilemma.

The judgment of the trial court is reversed, and the cause remanded to the trial court to enter judgment that the writ of mandate issue as prayed for.

Brown (Gerald), P. J., and Ault, J., concurred.

The petition of the defendant and respondent for a hearing by the Supreme Court was denied February 17, 1977.