[Civ. Nos. 46618, 46619. Second Dist., Div. Two. Feb. 25, 1977.]

ERNEST CHARLES WILSON et al., Plaintiffs and Appellants, v. JOHN J. HINKLE et al., Defendants and Respondents.

508

■

## Counsel

Falcone & Falcone and A. V. Falcone for Plaintiffs and Appellants.

Hill, Farrer & Burrill, William S. Scully, Jr., and Lynn E. Hall for Defendants and Respondents.

## Opinion

**BEACH, J.**—Plaintiffs appeal from the order of dismissal following the trial court's sustaining of defendants' demurrer without leave to amend. A second appeal, from an order denying plaintiffs' motion to strike defendants' memorandum of costs, is consolidated with this appeal.

### Facts

The essence of the lengthy complaint in the instant case is that plaintiffs (the former minister and certain members of the "Christ Church, Unity") are suing the present minister, several members, the church corporation, and others for return of the church[1] that they allege has been taken from them. Plaintiffs allege that the present minister, defendant Hinkle, once subscribed to the theories of the Unity Movement but has experienced a "diversion" and now practices "charismatic." Although defendant Hinkle has been urged by the general church organization and some members to reconsider and either return to his Unity ministry or establish his own church, he allegedly has refused to do either. The complaint further alleges that defendant Hinkle and other defendants have continued to receive substantial donations directed to the Unity Church to be used in its Unity ministry but that said defendants have applied these contributions to the charismatic and other new activities of the new church.

[1]At this point the word "church" is used as appellants also use it in a general all-inclusive sense to mean the ideas of an association or a congregation for worship and religious purposes, the corporate entity by which the church's secular affairs are carried on, and the church properties including the building containing the sanctuary.

■

The complaint states various damages allegedly sustained by plaintiffs. The prayer asks for certain declaratory relief in the form of several findings of facts, and also that defendants be ordered to deliver the property and assets of the church to plaintiff Wilson, the former minister of the Unity Church. The complaint further asks that title be quieted to all the properties and assets in the name of the church corporation for the benefit of the church and all its members.

Defendants demurred to the complaint on the grounds that (1) the court has no jurisdiction of the purported causes of action; (2) the pleading does not state facts sufficient to constitute causes of action; (3) plaintiffs lack standing to assert certain actions; and (4) the entire complaint and all causes of action are uncertain, including ambiguous and unintelligible.[2] The trial court sustained the defendants' demurrer to the complaint without leave to amend "on the grounds urged for said general demurrer in defendants' moving papers." The special demurrer was put off calendar. The order of dismissal was signed January 13, 1975. Defendants' memorandum of costs was received by the clerk of department 47 on January 23, 1975. The trial court denied plaintiffs' motion to strike defendants' memorandum of costs or in the alternative to stay all proceedings.

CONTENTIONS ON APPEAL

1. The trial court erred in sustaining the demurrer.

2. Respondents' memorandum of costs was untimely filed and should have been stricken.

DISCUSSION

1. *The trial court does not have jurisdiction over this dispute.*

One of the grounds for defendants' demurrer was that the court has no jurisdiction of the purported causes of action. Defendants argued that

---

[2]There is a minute order dated December 20, 1974, indicating that the demurrer of defendants had been submitted and was sustained without leave to amend on grounds specified in the moving papers. Orders of dismissal were filed December 20 and December 23, 1974. An application by plaintiffs for an ex parte order not to enter the order of dismissal on the sustaining of the demurrer in order to permit a motion to reconsider was denied by the trial court judge on December 26, 1974. However, plaintiffs filed another motion to reconsider defendants' demurrer to the complaint; on the court's own motion, the orders of dismissal signed and filed on December 20 and December 23 were ordered vacated nunc pro tunc. The court then granted plaintiffs' motion for reconsideration of the ruling made December 20. Upon reconsideration of the demurrer, the court then again sustained the defendants' demurrer as indicated above.

this type of ecclesiastical dispute should be resolved within the church and not in the civil courts. Guided by the United States Supreme Court decision in *Presbyterian Church* v. *Hull Church,* 393 U.S. 440 [21 L.Ed.2d 658, 89 S.Ct. 601], we agree.

*Hull, supra,* involved the withdrawal of two local Georgia churches from the general Presbyterian Church. The local churches claimed that the general church had departed from its original tenets and faith and practice for various reasons, including the ordaining of women as ministers and ruling elders; the making of pronouncements and recommendations concerning civil, economic, social, and political matters; giving support to the removal of bible reading and prayers by children in the public schools; and causing all members to remain in the National Council of Churches of Christ. (393 U.S. at p. 442 [21 L.Ed.2d at p. 661].) In the instant case, plaintiffs claimed to be representatives of the general church from whose tenets the local church allegedly has withdrawn. The principles involved regarding the jurisdiction of civil courts to resolve these matters, however, remain the same. Appellants want the trial court to decide whether minister Hinkle and his followers have departed from the doctrine as previously preached by plaintiff Wilson and the Unity Church; in *Hull, supra,* Georgia law required the civil courts to determine this type of "departure-from-doctrine." According to *Hull, supra,* 393 U.S. at p. 442 [21 L.Ed.2d at p. 661], a civil court may not apply the "departure-from-doctrine" standard.

■ "[T]he First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment. Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded. But First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern. Because of these hazards, the First Amendment enjoins the employment of organs of government for

essentially religious purposes, *Abington School District* v. *Schempp,* 374 U.S. 203 (1963); the Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine. Hence, States, religious organizations, and individuals must structure relationships involving church property so as not to require the civil courts to resolve ecclesiastical questions." (393 U.S. at p. 449 [21 L.Ed.2d at p. 665].)

*Hull* does permit limited court adjudication of rights involving church decisions. For example, civil courts can adjudicate whether a church decision has resulted from fraud, collusion, or arbitrariness. (393 U.S. at p. 451 [21 L.Ed.2d at p. 666], approving *Gonzalez* v. *Roman Catholic Archbishop,* 280 U.S. 1 [74 L.Ed. 131, 50 S.Ct. 5].) However, the "departure-from-doctrine" standard, as applied by the Georgia courts and as requested to be applied by appellants herein, has no place in the civil courts.[3]

The California cases cited by appellants are either inapposite or have been implicitly overruled by *Hull, supra,* and *Serbian Eastern Orthodox Diocese* v. *Milivojevich* (1976) 426 U.S. 696 [49 L.Ed.2d 151, 96 S.Ct. 2372].[4]

*St. James Armenian Church of Los Angeles* v. *Kurkjian,* 47 Cal.App.3d 547 [121 Cal.Rptr. 214], is not applicable. That case did involve church property; however, there was no dispute whatsoever regarding ecclesiastical doctrine. On the other hand, *In re Metropolitan Baptist Church of Richmond, Inc.,* 48 Cal.App.3d 850 [121 Cal.Rptr. 899], involved acceptance by the court of jurisdiction over property disputes even though some ecclesiastical matters were incidentally involved. The church in that case was dissolving, and the issues concerned the distribution of the assets. The court observed that since the property of a charitable or religious nonprofit corporation is held in trust to carry out the objects for which the organization was created and since California courts have accepted jurisdiction even where ecclesiastical questions may be indirectly involved when civil or property rights are involved

---

[3]Appellants argue that California has applied different constitutional standards than the United States Supreme Court. (*People* v. *Brisendine,* 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099].) However, those standards can only be stricter and not more lenient than those imposed by the United States Supreme Court in interpreting constitutional standards. Appellants herein argue for a standard that would be a less strict application of the First Amendment. That we cannot do.

[4]The out-of-state cases cited by appellants are, of course, not binding on us.

(*Providence Baptist Church* v. *Superior Ct.,* 40 Cal.2d 55, 60 [251 P.2d 10]; *Rosicrucian Fellow.* v. *Rosicrucian etc. Ch.,* 39 Cal.2d 121, 131 [245 P.2d 481]), a civil court could accept jurisdiction of the matter in that case. Respondents attempt to distinguish *In re Metropolitan Baptist Church of Richmond, Inc., supra,* as involving application of the *cy pres* doctrine upon the dissolution of a small church rather than interference in any doctrinal dispute between factions of an on-going congregation. Perhaps the *dissolution* of a church does involve less state interference with religion; we need not decide that issue. However, we do note that the California Supreme Court cases cited in *In re Metropolitan Baptist Church of Richmond, Inc., supra,* especially *Rosicrucian Fellow., supra,* 39 Cal.2d at p. 131—or at least some of the language therein—is governed and changed by *Hull.* (See also *Providence Baptist Church* v. *Superior Ct., supra,* 40 Cal.2d at p. 63.)[5]

Because of our resolution of the issue of jurisdiction, we need not discuss whether the demurrer was properly sustained on other grounds as well.

*2. The trial court did not err in failing to strike respondents' memorandum of costs.*

 Section 1033 of the Code of Civil Procedure provides in part that "the party in whose favor the judgment is ordered, and who claims his costs, must serve upon the adverse party, and file at any time after the verdict or decision of the court, and not later than *10 days* after the entry of the judgment, a memorandum of the items of his costs and necessary disbursements in the action or proceeding . . . ." (Italics added.) Appellants claim that respondents' memorandum was not filed within 10 days after the entry of the judgment. The requirement that the cost bill be filed within 10 days is not jurisdictional. (See *Davis Lumber Co.* v. *Hubbell,* 137 Cal.App.2d 148, 151 [290 P.2d 33], which deals with the earlier version of section 1033 that allowed only five days for filing. Cf.

---

[5]*Providence Baptist Church, supra,* 40 Cal.2d at p. 64, holds that where the question presented is whether the property and funds of the church are being handled in accordance with the bylaws and rules of the church corporation, those aggrieved may seek redress through court action. The court specifically states, however, "If the problem was whether the pastor was preaching a theology contrary to the denominational doctrine or conducting religious services in a manner out of harmony with the ritual of the church, it would clearly not be within the province of a court to interfere, and the controversy would have to be settled by the church tribunals. . . ." (40 Cal.2d at p. 63.) We are faced with that situation in the instant case. Therefore, even under the California law cited by appellants, the court does not have jurisdiction over these issues.

*Oppenheimer* v. *Ashburn,* 173 Cal.App.2d 624, 634-635 [343 P.2d 931].) "In the absence of prejudice, the trial court has broad discretion in allowing relief on grounds of inadvertence from a failure to timely file a cost bill. [Citations.]" (*Pollard* v. *Saxe & Yolles Dev. Co.,* 12 Cal.3d 374, 381 [115 Cal.Rptr. 648, 525 P.2d 88].) ■ ■■■ Given the confused procedural circumstances following the initial orders of dismissal and appellants' own attempts to secure a reconsideration of the sustaining of the demurrers, the trial court herein did nothing more than exercise its discretion in allowing relief upon good cause from a failure to timely file the cost bill.[6] ■ The trial court ordered the vacation of the December 20 and December 23 orders on January 13, 1975. On that date, the court also sustained the demurrer and ordered dismissal of the case. Therefore, any delay until January 23, 1975, is completely reasonable.[7] Although respondents' cost bill is stamped filed on January 30, 1975, the record contains declarations by counsel for respondents stating that she received the return of her directions regarding the memorandum of costs "with a notation thereon that the Memorandum had been received on January 23, 1975, by [the] . . . Clerk of Department 47." Therefore, even if the memorandum of costs was not stamped filed by the county clerk until January 30, 1975, the trial court did not abuse its discretion in refusing to strike the memorandum of costs.

The order dismissing the complaint after sustaining of the demurrers and the order denying the motion to strike the memorandum of costs are both affirmed.

Fleming, Acting P. J., and Compton, J., concurred.

A petition for a rehearing was denied March 22, 1977, and appellants' petition for a hearing by the Supreme Court was denied April 21, 1977.

---

[6]This determination rests on the assumption that the cost bill was in fact untimely filed. The original orders of dismissal were filed, though not entered from what we can tell, on December 20 and December 23. The trial court technically should not have vacated those orders nunc pro tunc in order to deal with plaintiffs' motion for reconsideration. Such an order should not be made for the purpose of declaring that something was done which was not done at the time. " 'Its only office is to cause the record to show something done which was actually done, but which, by misprision or neglect, was not at the time entered in the record.' [Citation.]" (*City of Los Angeles* v. *Superior Court,* 264 Cal.App.2d 766, 771 [70 Cal.Rptr. 826].)

[7]At the hearing on January 10, 1975, the trial court judge personally took responsibility for the "snarl up" in the proceedings. He stated that even on that date, no order of dismissal had been entered. Since section 1033 of the Code of Civil Procedure refers to "10 days after the *entry* of the judgment" (italics added), it can be argued that respondents were not dilatory in failing to file before the entry of the final order of dismissal.