[Civ. No. 24002. Fourth Dist., Div. One. Jan. 26, 1982.]

M.C.A., Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Charles L. Goldberg and Goldberg & Link for Plaintiff and Appellant.

Donald L. Clark, County Counsel, Lloyd M. Harmon, Jr., Chief Deputy County Counsel, and Greer D. Knopf, Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**WIENER, J.—** ■ The issue in this appeal by M.C.A, whose identity is protected under the federal witness program, is whether the trial court ruled correctly in denying his motion for reimbursement of expenses and attorney fees after he successfully resisted efforts under Penal Code section 1334.2[1] to compel his attendance before a Florida grand jury. Finding no statutory or common law basis to accommodate his request, we affirm the order.

In M.C.A.'s first appeal, we reversed the section 1334.2 order compelling his appearance before the Grand Jury of Broward County, Florida, and "remanded for further proceedings consistent with the

---

[1]Section 1334.2 is part of California's version of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Cases (hereinafter Act). (See generally Pen. Code, §§ 1334-1334.6.) All statutory references are to the Penal Code unless otherwise specified.

views here expressed. Appellant to recover costs on appeal." (*In re M.C.A.* (Apr. 23, 1980) 4 Civ. 22150 [unpub. opn.].) Upon remand, the court denied M.C.A.'s motion for reimbursement from the State of California for all expenses and attorney fees incurred at both the trial and appellate levels.[2] This appeal followed.

We begin by noting the familiar precept that California courts have ?consistently awarded attorney fees only on the basis of statute or an established common law doctrine. (See generally *Bauguess* v. *Paine* (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942]; Code Civ. Proc., § 1021.) The Uniform Act which governed the underlying proceedings (see fn. 1, *ante*) contains no provision for the award of attorney fees.[3]

Recognizing that fact, M.C.A. based his trial court motion for expenses solely on Code of Civil Procedure section 1987.2.[4] That civil discovery statute, of doubtful application in criminal proceedings (*Fabricant* v. *Superior Court* (1980) 104 Cal.App.3d 905, 914 [163 Cal.Rptr. 894]), permits the trial court to award expenses, including attorney fees, against one who in bad faith or without substantial justification makes or opposes a motion to quash a subpoena.

We question the statute's application here where the Legislatures of California and 48 other states have formalized the procedure for obtaining out-of-state witnesses pursuant to a Uniform Act. Unlike the administrative process of Code of Civil Procedure sections 1985 and 1986, permitting the clerk to issue a blank subpoena without notice to the witness, the Act provides a carefully structured mechanism to assure notice and hearing to the witness before the court issues the order

---

[2]M.C.A. requested reimbursement for $9,712.50 attorney fees; $1,334.85 witness fees to secure the attendance of M.C.A.'s Florida attorney at the local hearings; and $91 for photographic reproduction of pleadings and motions.

[3]For those with a penchant for trivia, our count reveals the Legislature has made provision for attorney fees in 160 statutes appearing in 15 codes. (See Olson, Brosnahan & Margolin, *Attorney Fees from the Perspective of the Trial Judge and Trial Attorney* (1981) Joint CJA/State Bar Program Seminar Material.)

[4]Code of Civil Procedure section 1987.2 provides: "In making an order pursuant to motion made under subdivision (c) of Section 1987 or under Section 1987.1, the court may in its discretion award the amount of the reasonable expenses incurred in making or opposing the motion, including reasonable attorneys' fees, if the court finds the motion was made or opposed in bad faith or without substantial justification or that one or more of the requirements of the subpoena was oppressive."

compelling attendance.[5] Section 1334.2 requires the judge to set a hearing and make an order directing the witness to appear. Witnesses may then be called and evidence presented to establish whether the appearance of the cited witness is necessary and whether compelling him to appear in another state will cause him undue hardship. After the order is entered, either side has the right to appeal.

The manifest differences between the normal civil subpoena procedure and the specialized provisions of the Uniform Act compel a conclusion that the Legislature did not intend Code of Civil Procedure section 1987.2 to apply to cases arising under the Uniform Act. To begin with, M.C.A. here seeks an award of expenses and attorney fees from the State of California. Section 1987.2 only authorizes a court to make such an award against a party litigant who seeks a subpoena without adequate justification. California did not seek to subpoena M.C.A.; it merely processed *Florida's* request and conducted a hearing on the issue.

Second, it is also significant that the Act precludes the California court from questioning the reasonableness of the order of the out-of-

---

[5]Section 1334.2 provides in pertinent part: "If a judge of a court of record in any state, which by its laws has made provision for commanding persons within that state to attend and testify in this state, issues a certificate under the seal of the court that there is a criminal prosecution pending in the court, or that there is a grand jury investigation, that a person within this state is a material witness in such prosecution or grand jury investigation, and that his presence will be required for a specified number of days, then, upon presentation of the certificate to a judge of a court of record in the county in which the person is, a time and place for a hearing shall be fixed by the judge and he shall make an order directing the witness to appear at the hearing.

"If at the hearing, the judge determines that the witness is material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution or grand jury investigation in the other state, and that the laws of the state, in which the prosecution is pending or in which there is a grand jury investigation, will give to the witness protection from arrest and service of civil and criminal process and will furnish in advance to the witness the sum of ten cents ($0.10) for each mile necessarily traveled if the witness elects surface travel or the minimum round trip scheduled airlines fare plus twenty cents ($0.20) a mile for necessary surface travel at either end of the flight if the witness elects air travel, and a per diem of twenty dollars ($20) for each day that he is required to travel and attend as a witness and that the judge of the court in which the witness is ordered to appear will order the payment of witness fees authorized by law for each day the witness is required to attend the court plus reimbursement for any additional expenses of the witness which the judge of the court in which the witness is ordered to appear shall find reasonable and necessary, he shall issue a subpoena, with a copy of the certificate attached, directing the witness to attend and testify in the court where the prosecution is pending, or where the grand jury investigation is, at a time and place specified in the subpoena. In any such hearing the certificate shall be prima facie evidence of all the facts stated therein."

state court issuing the certificate for attendance of a witness. The Act mandates the court receiving the certificate to direct the witness to appear at a hearing at a time and place fixed by the judge. In our view, it is unlikely the Legislature intended assessment of attorney fees and expenses against the fisc of this state in situations where the California court did nothing more than perform its statutory duty.[6]

Finally, even were we to accept M.C.A.'s theory that California may be charged with bad faith based on the trial court's issuance of the subpoena, an order which this court later reversed on appeal, we would still find section 1987.2 inapplicable.[7] The purpose of the attorney fee provision in that section is to compensate the potential witness for attorney fees incurred in moving to quash the issued subpoena, fees which would not have been incurred but for the issuing party's bad faith. Proceedings under the Act, however, require a hearing *before* the issuance of the subpoena. Regardless of the outcome of that proceeding, a reluctant witness necessarily incurs expenses in resisting the issuance of the subpoena. This inevitable cost thus reflects the nature of the proceeding and not, as M.C.A. contends, a court's bad faith. It would indeed be contrary to the underlying purpose of both statutory schemes to assess California when it has only attempted, both through legislation and judicial action, to assure its residents notice and an opportunity to be heard before ordering a resident to appear as a witness out of state.

We therefore conclude the Legislature did not intend Code of Civil Procedure section 1987.2 to apply to proceedings under the Uniform Act.[8]

---

[6]It also is not surprising that the Commissioners of the Uniform Laws, sensitive to political realities, did not propose that the requesting state be liable for attorney fees. Such a provision in effect would have amounted to a carte blanche provision permitting the court receiving a request for attendance of a witness to determine whether the requesting state should bear that financial burden. To have included such a provision would indeed have had a chilling effect upon the good faith cooperation among the states essential to the effective operation of the Act.

[7]We note our inability to locate any precedent requiring the state to pay costs because of a trial court's erroneous ruling, particularly where a judge acting within the scope of his jurisdiction is immune from liability, even where he acts in error maliciously. (See *Stump* v. *Sparkman* (1978) 435 U.S. 349, 357-358 [55 L.Ed.2d 331, 339-340, 98 S.Ct. 1099].)

[8]On appeal, M.C.A. for the first time claims entitlement to attorney fees and costs pursuant to the "vexatious litigant doctrine." We reject his request for there is no legal or factual basis for its application. (See *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 27 [112 Cal.Rptr. 786, 520 P.2d 10]; 4 Witkin, Cal. Procedure (1981 supp.) Judgment, § 116, p. 211.)

As to M.C.A.'s request for costs on his first appeal, we note that his failure to have complied earlier with the requirements of Code of Civil Procedure section 1034 is not fatal because the trial court retains discretion to allow relief from failure to file timely. (See *Wilson* v. *Hinkle* (1977) 67 Cal.App.3d 506, 512 [136 Cal.Rptr. 731], cert. den. (1977) 434 U.S. 858 [54 L.Ed.2d 130, 98 S.Ct. 181].)

*Disposition*

Judgment is modified to permit M.C.A. to request relief from the 10-day filing requirement of Code of Civil Procedure section 1034 in order to recover his costs on the first appeal. As modified, the judgment is affirmed. Each party to bear its own costs on this appeal.

Work, J., concurred.

**STANIFORTH, Acting P. J.**—I respectfully dissent.

The majority can find no specific authority in the Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases (the Uniform Act) (Pen. Code, § 1334 et seq.) for attorney fees, therefore concludes none was intended by the Legislature to be forthcoming. In focusing on the process of statutory construction by negative implication, the majority misses the factual essence of this case. M.C.A. suppressed an order—an oppressive subpoena—to appear. He was without fault, enmeshed in the Act proceedings. He was not a person suspected of or accused of a crime but a bystander—a potential witness—sought to be compelled to testify in grand jury proceedings in Florida.

The majority not only fails to take full legal cognizance of these significant undisputed facts but also disregards the plain language contained in Code of Civil Procedure section 1987.2 which without qualification as to the nature of the proceedings, civil or criminal, or parties, authorizes the award of attorney fees and reasonable expenses to a party who successfully quashes an oppressive or bad faith subpoena.

Code of Civil Procedure section 1987.2 provides: "In making an order pursuant to motion made under subdivision (c) of Section 1987 or under Section 1987.1, the court may in its discretion award the amount of reasonable expenses incurred in making or opposing the motion, including reasonable attorneys' fees, if the court finds the motion was made or

opposed in bad faith or without substantial justification or that one or more of the requirements of the subpoena was oppressive."

I

The motion to quash a subpoena referred to in Code of Civil Procedure section 1987.2 is authorized under Code of Civil Procedure section 1987.1 which provides in pertinent part: "When a subpoena requires the attendance of a witness ... before a court, ... the court, upon motion reasonably made by the party or the witness, or upon the court's own motion after giving counsel notice and an opportunity to be heard, may make an order quashing the subpoena entirely, modifying it, or directing compliance with it upon such terms or conditions...."

The "subpoena" referred to in section 1987.1 of the Code of Civil Procedure is specifically defined in Code of Civil Procedure section 1985 as follows: "The process by which the attendance of a witness is required is the subpoena. *It is a writ or order directed to a person and requiring his attendance at a particular time and place* to testify as a witness...." (Italics added.)[1]

In the instant case, the State of Florida, by and through the State of California, sought to compel the attendance of M.C.A. before the Florida grand jury pursuant to proceedings under the Uniform Act. Pursuant to Penal Code section 1334.2, once a certificate from a judge of record in Florida is presented to the superior court in the County of San Diego seeking to require the attendance of a witness in San Diego before a Florida proceeding, the San Diego Superior Court shall fix a time and place for the hearing and "shall make an order directing the witness to appear at the hearing."

---

[1]The definition provided in section 1985 is consistent with the general, ordinary, and historic use of the term. A subpoena is "[t]he process to cause a witness to appear and give testimony" (Black's Law Dict. (4th ed. 1951) p. 1595, col. 1); "[t]he process by which the attendance of a witness is required.... It is a writ or order directed to a person, and requiring his attendance ... to testify as a witness" (Black's Law Dict. (3d ed. 1933) p. 1669, col. 1); an order with a penalty, usually exacted by contempt proceedings, for its disobedience (see, 18 Ops.Cal.Atty.Gen. 236). In this case both the ordinary meaning of the term and statutory definition are the same: "In order that legislative intent be given effect, a statute should be construed with due regard for the ordinary meaning of the language used and in harmony with the whole system of law of which it is a part." (*California State Restaurant Assn. v. Whitlow* (1976) 58 Cal. App.3d 340, 347 [129 Cal.Rptr. 824].)

At the hearing before the superior court, the judge is required to determine that the witness is material and necessary and it will not cause undue hardship to the witness to be compelled to attend and testify before the grand jury of the demanding state. *Once the judge is satisfied that these two requirements have been met, the statute instructs the judge to "issue a subpoena, with a copy of the certificate attached, directing the witness to attend and testify in the court where the prosecution is pending, or where the grand jury investigation is, at a time and place specified in the subpoena."* (Italics added.) In the instant case, the trial court (Judge Gilliam) initially found M.C.A. was a material and necessary witness and that it would not cause undue hardship to him to be compelled to travel and testify before the Florida grand jury. Accordingly, he then issued a subpoena pursuant to the terms of Penal Code section 1334.2.

The language utilized by the court referred to this action as an "order," yet Judge Gilliam was directed by the Uniform Act and in substance issued a subpoena. *The language of Penal Code section 1334.2 expressly authorized the issuance of a "subpoena" at this point in the procedure, not an "order."* Thus, the misnomer by Judge Gilliam should not affect the resolution of the instant appeal.

Furthermore, the definition contained in Code of Civil Procedure section 1985 expressly covers the type of action taken by the court in the instant case. The order issued by Judge Gilliam was "a writ or order directed to a person" and required "his attendance at a particular time and place to testify as a witness." *Irrespective of the name given to the action, it was, in substance, a subpoena as defined in Code of Civil Procedure section 1985.*

The hearing conducted pursuant to Penal Code section 1334.2 to determine whether M.C.A. was a material and necessary witness, and whether it would cause undue hardship to him to be compelled to attend and testify before the Florida grand jury is identical to the hearing conducted pursuant to a motion to quash a subpoena authorized under section 1987.1 of the Code of Civil Procedure. In fact, for purposes of application of section 1987.2 of the Code of Civil Procedure the two hearings are indistinguishable.

At a hearing to quash a subpoena duces tecum, the court must determine whether the party seeking the discovery has made a showing of good cause for the production of said matters and whether the items

sought are material and relevant to the case. (*Johnson* v. *Superior Court* (1968) 258 Cal.App.2d 829 [66 Cal.Rptr. 134]; *Flora Crane Service, Inc.* v. *Superior Court* (1965) 234 Cal.App.2d 767 [45 Cal.Rptr. 79].)

Code of Civil Procedure section 1987.2 authorizes the subpoena duces tecum to be quashed if made in bad faith or if one or more of its requirements are oppressive. The hearing pursuant to Penal Code section 1334.2 applies the same standard and the court must make the same determination with respect to materiality, good faith and oppressiveness. Consequently, the hearings pursuant to both code sections examine the same issues and make the same determination as to whether compliance with the subpoena or order is required.

I conclude, from the plain unvarnished language of section 1987.2 of the Code of Civil Procedure, that it authorizes the superior court to award attorney fees when a subpoena issued pursuant to Penal Code section 1334.2 is found to be in bad faith or oppressive. This court reversed the superior court's earlier issuance of the "order" holding there was manifest undue hardship to M.C.A. and the demanding state and its successors in interest had acted with "unclean hands." Specifically this court stated: "The amended certificate here makes no reference whatsoever to the matter of undue hardship to be caused by compelling MCA to appear, testify in Florida grand jury proceedings but discloses facts which would support a rational conclusion that MCA would be a prime subject for extinction by the parties being investigated for murder and loan sharking in Florida." (*In re M.C.A.* (Apr. 23, 1980) 4 Civ. 22150 [unpub. opn.].)

This court's finding of oppressiveness in the subpoena's enforcement as the law of the case is conclusive and binding in the instant proceedings. Since the subpoena's requirements were oppressive, as the trial court also eventually concluded, Code of Civil Procedure section 1987.2 authorizes the court to award M.C.A. reasonable expenses and attorney fees incurred in opposing the subpoena by the State of Florida and its surrogate, the State of California.

## II

The majority opinion violates sound principles of statutory interpretation that compel the conclusion a subpoena issued pursuant to Penal

Code section 1334.2 is a specie of a "subpoena" referred to in Code of Civil Procedure section 1987.2.

A statute is not to be construed in such a manner as to result in a palpable absurdity. (*People* v. *Craycroft* (1896) 111 Cal. 544 [44 P. 463]; *People* v. *Black* (1941) 45 Cal.App.2d 87 [113 P.2d 746].) Statutes are to be given a reasonable and common sense construction which will render them valid and operative rather than a construction which will defeat them. (*People* v. *Davis* (1968) 68 Cal.2d 481 [67 Cal.Rptr. 547, 439 P.2d 651]; *People* v. *Hacker Emporium, Inc.* (1971) 15 Cal. App.3d 474 [93 Cal.Rptr. 132].)

Furthermore, words used in a statute must be construed in context, keeping in mind the nature and obvious purpose of the statute. (*Johnstone* v. *Richardson* (1951) 103 Cal.App.2d 41 [229 P.2d 9]; *People* v. *Superior Court* (1969) 70 Cal.2d 123 [74 Cal.Rptr. 294, 449 P.2d 230].)

Statutes must be construed to effect the intent of the Legislature and to ascertain legislative intent the courts should construe the statutes in the context of the whole system of law. (*People* v. *Ruster* (1976) 16 Cal.3d 690, 696 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269].) In *H.S. Mann Corp.* v. *Moody* (1956) 144 Cal.App.2d 310, 320 [301 P.2d 28], it was held: "The guiding star of statutory construction is the intention of the Legislature. To the end that it be correctly ascertained the statute is to be read in the light of its historical background and evident objective. [Citation.]"

It is a most basic rule of statutory construction that one code and another must be read and construed together; "for purposes of statutory construction the codes are to be regarded as blending into each other and constituting but a single statute." (*Pesce* v. *Dept. Alcoholic Bev. Control* (1958) 51 Cal.2d 310, 312 [333 P.2d 15].) The sections of the code are in pari materia, therefore they must be construed together and effect given to each section. (*Estate of McDill* (1975) 14 Cal.3d 831, 836-837 [122 Cal.Rptr. 754, 537 P.2d 874], citing the 1889 case of *Gleason* v. *Spray* (1889) 81 Cal. 217, 221 [22 P. 551].) Our own court has written "Every statute should be construed with reference to the whole system of law of which it is a part so that all may be harmonized and have effect." (*Morrison* v. *Unemployment Ins. Appeals Bd.* (1976) 65 Cal.App.3d 245, 250 [134 Cal.Rptr. 916].)

In the case at bench, the legislative history of the Uniform Act indicates that the Legislature expressly intended that the procedures contemplated therein involve a "subpoena" process. The original text of the Uniform Act, drafted by a national Congress in 1936, authorized the judge, upon determining that the witness was material and necessary and that no undue hardship would result from compelling his attendance, to issue a *summons* directing the witness to attend and testify in the demanding state. (11 U. Laws Ann., § 2, p. 8.) However, the California Legislature in enacting these provisions specifically revised the statutes changing the word summons to *subpoena*. The Uniform Act embodied in section 1334 et seq. of the Penal Code refers to the process by which a witness is directed to appear and testify before a court as a subpoena in no less than 15 different instances. From these changes in the original text it is clear that the Legislature expressly intended that the Uniform Act authorize the issuance of a subpoena rather than any other form of court order. This fact alone supports the proposition that attorney fees are authorized in the instant case.

It is presumed the Legislature is fully aware of preexisting legislation and case law at the time of enacting a statute. Thus when enacting Code of Civil Procedure section 1987.2, the Legislature was fully aware of the use of the term subpoena in Penal Code section 1334.2 and intended that the provisions apply to them as well; otherwise, the Legislature would have taken measures to except the section 1334.2 subpoena.

Moreover, the legislative history of Code of Civil Procedure section 1987.2 supports the conclusion that the California Legislature, in enacting this section, intended to encompass this subpoena referred to in section 1334.2 of the Penal Code within its provisions. The comment in the Legislative Counsel's Digest of Senate Bill No. 1877, 4 Statutes 1976 (Reg. Sess.) Summary Digest, page 317, states: "This bill would make specific provision for a court order to quash, modify, or limit a subpoena of a witness for the production of items before a court.

"This bill would permit a court to award the amount of reasonable expenses incurred, including attorney's fees, in making or opposing such a motion where the court finds the motion was made or opposed in bad faith or without substantial justification or that one or more of the requirements of the subpoena was oppressive."

These comments and the very terms of section 1987.2 of the Code of Civil Procedure also suggest two underlying policies promoted by section 1987.2, both of which also apply to a subpoena issued pursuant to Penal Code section 1334.2 and which are thwarted by the majority opinion.

The first policy focuses on preventing the abuse of process which occurs when a witness is subpoenaed in bad faith or issued an oppressive subpoena. The statute is obviously intended to punish the subpoenaing party for abusing this system by compelling them to pay the witness' expenses and attorney fees. Likewise, the statute is intended to deter future abuses by imposing such a sanction. In the instant case, awarding attorney fees and expenses would deter the State of Florida, acting by and through the agency of the State of California, from reattempting such an oppressive measure against M.C.A.[2]

The second policy promoted by section 1987.2 of the Code of Civil Procedure highlights the protection to be afforded a witness subpoenaed oppressively or in bad faith. This policy has constitutional dimensions in that the due process clause of the Constitution is implicated whenever a witness is deprived of his liberty for the purpose of compelling him to appear before a court. Thus, an agency of the State of California must not take part in any process wrongfully, in bad faith, or oppressively, which compels a witness to appear before a California court or a grand jury proceeding in a sister state.

Finally, the statute on its face indicates that no distinction between types of subpoenas was intended. The statute does not distinguish between subpoenas issued pursuant to separate and distinct statutory provisions. No narrowing interpretations or limitations are contained in the statute, and to construe the statute in such a manner would, as noted, defeat its purpose. Accordingly, I would construe the term "subpoena" to mean all subpoenas as the term is used throughout the California statutory provisions. A subpoena issued pursuant to Penal Code section 1334.2 is necessarily included within the proscription against bad faith and oppressive subpoenas contained in Code of Civil

---

[2]The majority seeks to relieve the State of California from liability for an oppressive abusive subpoena on some not quite clear agency principles. The law regarding agents' responsibility for bad faith or oppressive acts does not support the majority view. An agent is responsible for its own wrongful acts "regardless of whether the principal is liable or amenable to judicial action." (*James* v. *Marinship Corp.* (1944) 25 Cal.2d 721, 743 [155 P.2d 329, 160 A.L.R. 900]; Civ. Code, § 2343, subd. 3.)

Procedure section 1987.2. The trial court here failed to exercise the discretion bestowed upon it when it construed section 1987.2 to exclude subpoenas issued pursuant to Penal Code section 1334.2, thus evading and defeating the twin policies promoted by the statute.

## III

M.C.A. was sought to be subpoenaed to appear as a witness before a grand jury. If as the majority argues, Code of Civil Procedure section 1987.2 applies only to *civil* proceedings (citing as authority *Fabricant* v. *Superior Court* (1980) 104 Cal.App.3d 905, 914-915 [163 Cal.Rptr. 894]), then the grand jury proceeding met this test: The grand jury is an inquisitional body of ancient origin. (*People* v. *Foster* (1926) 198 Cal. 112, 120 [243 P. 667]; *Monroe* v. *Garrett* (1971) 17 Cal.App.3d 280, 284 [94 Cal.Rptr. 531]; *People* v. *Pipes* (1960) 179 Cal.App.2d 547, 553 [3 Cal.Rptr. 814].) It is a "vigilant watchdog." (*People* v. *Superior Court* (*1973 Grand Jury*) (1975) 13 Cal.3d 430, 436 [119 Cal.Rptr. 193, 531 P.2d 761].) And when engaged in its indicting for crime function, it is in no proper sense a criminal proceeding.

In a case involving the distinctions between the Fifth Amendment privileges of a witness and of a defendant, the court in *In re Lemon* (1936) 15 Cal.App.2d 82, 85 [59 P.2d 213], after extensive review of the authorities, commented that "the sounder view" is that: "[A] grand jury investigation is in no proper sense a criminal proceeding and that no person has the status of a party defendant in such investigation which is held merely for the purpose of determining whether any criminal proceeding shall be commenced." It is well established that a grand jury is "'a judicial body'" and "'an instrumentality of the courts of this state.'" (*People* v. *Superior Court* (*1973 Grand Jury*), *supra*, 13 Cal.3d 430, 438.) As such, it is not exclusively either civil or criminal in nature, but, as Justice Mosk recognized in his dissent in that case, combines both functions. (*Id.*, at p. 442.) While its origins may be lost in antiquity and its functions at times defy definition, yet one thing is clear: "A grand jury proceeding is not a criminal trial." (*People* v. *Flores* (1969) 276 Cal.App.2d 61, 66 [81 Cal.Rptr. 197]; *People* v. *Dupree* (1957) 156 Cal.App.2d 60, 65 [319 P.2d 39]; *In re McDonough* (1937) 21 Cal.App.2d 287, 288 [68 P.2d 1020].)

Since M.C.A.'s presence was sought in pursuit of the grand jury's investigative or civil function, it follows that *Fabricant* v. *Superior Court, supra*, 104 Cal.App.3d 905, 914-915, simply is not in point. (See *In re*

*Marriage of Lemen* (1980) 113 Cal.App.3d 769, 787 [170 Cal.Rptr. 642].) Factually *Fabricant* involved a defendant in a pending *criminal* matter who was assessed sanctions by the trial court as punishment for his abuse of the subpoena power. In reaching its decision, the Court of Appeal observed concerning Code of Civil Procedure sections 1987.1 and 1987.2, "It does not, however, appear that they are intended to apply in *criminal actions*." (*Fabricant, supra,* 104 Cal.App.3d at p. 914; italics added.) M.C.A. in the instant case was not a criminal defendant; he was not abusing the subpoena power but instead was victimized by it. Neither can the proceeding for which his presence was sought properly be characterized as a criminal matter, to which civil discovery principles would be inapplicable, since the purpose of the investigation being conducted by the grand jury was to determine whether criminal charges should be filed. *Fabricant* gives no aid or comfort to the majority.[3]

Finally, I am persuaded by the fact that M.C.A.'s defense against the exercise of the Uniform Act power by respondents was necessarily couched within the procedures contemplated by that act. Presumably, he could have insured the applicability of Code of Civil Procedure section 1987.2 by making a motion under Code of Civil Procedure section 1987.1 to quash the subpoena duly issued by the superior court in this matter in response to the requesting state's having prevailed at the section 1334.2 hearing. Yet this would have been an idle and useless act, of the type which the law declines to require. (Cf., Civ. Code, § 3532.)

M.C.A. was a subpoenaed material witness sought to be compelled to appear before a Florida grand jury performing its investigative duties—essentially a civil function; M.C.A.'s vigorous and successful opposition to the proceedings under the Uniform Act was legally tantamount to a motion to quash brought under Code of Civil Procedure section 1987.1.

Our previous opinion in M.C.A.'s case clearly shows that the standards of Code of Civil Procedure section 1987.2, requiring a showing of bad faith, oppression, or unreasonableness for an award of attorney fees, have been met in this case. To deny such an award would render those conclusions in our previous opinion essentially meaningless. For each of these reasons I would conclude the attorney fees provisions of

---

[3]*Fabricant* concedes that placement in the Code of Civil Procedure "is not determinative," citing *Lewis v. Dunne* (1901) 134 Cal. 291, 293-294 [66 P. 478]. (*Ibid.*)

Code of Civil Procedure section 1987.2 are applicable. The cause should be remanded for proceedings conforming to the views expressed in this dissent.

On February 24, 1982, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied March 25, 1982.