TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

------------------------------
                 :

|  |  |
|---|---|
| OPINION | : |
| | : |
| of | :     No. 86-701 |
| | : |
| JOHN K. VAN DE KAMP | :     <u>AUGUST 20, 1987</u> |
| Attorney General | : |
| | : |
| ANTHONY S. DA VIGO | : |
| Deputy Attorney General | : |
| | : |

------------------------------------------------------------

THE HONORABLE WILLIAM P. BAKER, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

Is a written agreement between the parties to a civil dispute to submit the dispute to arbitration by a third party not a member of the State Bar of California for resolution pursuant to and in accordance with the tenets of their religious affiliation, both valid and enforceable?

CONCLUSION

A written agreement, which does not otherwise violate the law or the public policy of the state, between the parties to a civil dispute to submit the dispute to arbitration by a third party not a member of the State Bar of California for resolution pursuant to and in accordance with the tenets of their religious affiliation, is both valid and enforceable.

ANALYSIS

We are advised that according to the tenets of a particular religious denomination, the resolution of civil disputes among its members must be determined within and pursuant to the principles and imperatives of doctrinal precepts and ethics. In this regard it is stated that:

"Internal dispute resolution procedures have existed within diverse ecclesiastical traditions for thousands of years. Internal dispute resolution procedures are critical to the obedience of the religious body to its religious requirements, to the maintenance of discipline and uniform compliance to its

religious standards by its members, to the maintenance of unity within the religious community, to the protection of its reputation in society, and to the preservation of its distinctive religious identity. Within the Christian tradition, the ultimate purpose of the internal dispute resolution process is to bring reconciliation between the persons, not simply to settle a legal dispute."

The inquiry presented is whether two or more members may submit such a dispute between them to a third party member of the denomination who is not a member of the State Bar of California, for arbitration according to such principles. Specifically, it must be determined whether such a submission for arbitration, pursuant to the terms of an express written agreement, would be valid and enforceable.

A "civil dispute" for purposes of this discussion refers to a disagreement between two or more parties relating to their private rights, providing a basis for a civil, as distinguished from a criminal, action. (Cf., Code Civ. Proc. § 24; Bailey v. Superior Court (1956) 142 Cal.App.2d 47, 53; Webster's New Internat. Dict. (3rd ed., 1961) pp. 412-413, "civil".) A "civil action", arising out of an obligation, whether contractual or by operation of law, or injury, whether to the person or to property (Code Civ. Proc., §§ 25, 26, 27), is prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong. (Code Civ. Proc., § 30; Black's Law Dict. (Spec. Deluxe 5th ed., 1979), p. 222, "civil action".) An action is an ordinary proceeding in a court of justice (Code Civ. Proc., § 22), the primary judicial function of which is to enforce legal obligations and redress injuries to legal rights by the determination of such disputes. (Warner v. F. Thomas Parisian Dyeing & Cleaning Works (1895) 105 Cal. 409, 412; Vecki v. Sorensen (1959) 171 Cal.App.2d 390, 393.) Thus, civil disputes are generally determined by the law of the state, as hereinafter defined, and enforced in particular cases by litigation between the parties in the courts.

The parties to a civil dispute may, in the alternative, submit a controversy for determination and decision to a private, unofficial third party in the manner provided by law or by agreement. (Stockwell v. Equitable Fine & Marine Ins. Co. (1933) 134 Cal.App. 534, 540.) This summary and expeditious means of extra-judicial dispute resolution, pursuant to a stipulation of the parties, is called arbitration. (Snyder v. Superior Court (1937) 24 Cal.App.2d 263, 267.)[1]

---

[1]We are not presented in connection with the present inquiry with the specific terms and conditions of any particular agreement or the nature of any certain dispute. It is assumed for purposes of this analysis that neither the underlying contract which provides for arbitration nor any course of action prescribed by an award thereunder would be contrary to law or public policy. (See American & Nat. etc. Baseball Clubs v. Major League etc. Assn. (1976) 59 Cal.App.3d 493, 498.) It will be further assumed that the matter in dispute does not fall within the realm of public concern which might not be subject to arbitration by individuals. (Cf. Estate of Carpenter (1900) 127 Cal. 582, 585 - contest as to validity of will; Franklin v. Nat. C. Goldstone Agency (1949) 33 Cal.2d 628, 632 - enforcement of contract entered into without prerequisite license.)

With respect to arbitration as an alternative method for the resolution of justiciable controversies, it has been said that "by reason of the fact that the proceeding represents a method of the parties' own choice and furnishes a more expeditious and less expensive means of settling controversies than the ordinary course of regular judicial proceedings, it is the policy of the law to favor arbitration. Therefore every reasonable intendment will be indulged to give effect to such proceedings." (Utah Const. Co. v. Western Pac. Ry. Co. (1916) 174 Cal. 156, 159; and see Izzy v. Mesquite Country Club (1986) 186 Cal.App.3d 1309, 1315.) Further, an agreement to arbitrate should be liberally construed in furtherance of the policy of the law to encourage the settlement of disputes by arbitration. (Solari v. Oneto (1958) 166 Cal.App.2d 145, 153.)

The Legislature has enacted a comprehensive all-inclusive statutory scheme applicable to all written agreements to arbitrate. (Code Civ. Proc., § 1280 et seq.; Solari v. Oneto, supra, 166 Cal.App.2d at 153.)[2] Section 1281 of the Code of Civil Procedure provides as follows:

"A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."

In Sanserino v. Shamberger (1966) 245 Cal.App.2d 630, 636, the court similarly stated:

"When an agreement provides for the determination by a third person or persons of some proper matter to be settled and that the decision shall be final, a submission to and determination by him or them of the matter is binding on the parties. That is true whether the arrangement is technically a common law or statutory arbitration or something akin thereto. [Citations.]"

Section 1280, subdivision (c), of said code defines an arbitrable controversy as covering "any question" arising between the parties to an agreement whether such question is one of law or of fact or both. (See 64 Ops.Cal.Atty.Gen. 47, 50-51 (1981).) Hence, any justiciable issue, except as noted in footnote 1, ante, is arbitrable.

The conduct, evidence, and procedure of an arbitration hearing may be prescribed by the agreement itself.[3] A self-executing arbitration clause is one which permits and provides for arbitration under rules therein incorporated. (Mitchum, Jones & Templeton, Inc. v. Chronis (1977)

_____

[2]Since the agreement in question is written, the doctrines applicable to common law arbitration are inapposite. (Id., at 151; Crofoot v. Blair Holdings Corp. (1953) 119 Cal.App.2d 156, 181.)

[3]The conduct, evidence, and procedure of an arbitration hearing are prescribed in Code of Civil Procedure section 1282.2, "Unless the arbitration agreement otherwise provides."

72 Cal.App.3d 596, 601.) Such a clause which is sufficiently comprehensive as to import into the contract the entire scheme for arbitration is valid and enforceable without regard to a prior court order under section 1281.2 of the Code of Civil Procedure. (Id., at 600-601 -- constitution and rules of the New York Stock Exchange; Kustom Kraft Homes v. Leivenstein (1971) 14 Cal.App.3d 805, 810-811 -- rules of the American Arbitration Association.)

Further, the applicable principles and rules of decision, if other than the law of the forum, may be prescribed by the agreement. Thus, unless specifically required to act in conformity with rules of law, an arbitrator may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action. (Lindholm v. Galvin (1979) 95 Cal.App.3d 443, 450-451.) Even where the arbitrator is called upon to apply a rule of law external to the agreement of the parties, the award is not subject to review for legal error. (Rodrigues v. Keller (1980) 113 Cal.App.3d 838, 843.) We find no reason to doubt that such designated basis for determination might include religious doctrine or precepts.

It remains to be considered whether an arbitrator applying religious principles in accordance with the terms of the agreement is engaged in the practice of law, and whether an agreement to submit such a dispute to arbitration is enforceable in a court of law. The first of these issues arises since it is unlawful for any person to practice law in this state without active membership in the State Bar. (Bus. & Prof. Code, §§ 6125, 6126; Howard v. Superior Court (1975) 52 Cal.App.3d 722, 726.) Such practice was defined in Smallberg v. The State Bar (1931) 212 Cal. 113, 119:

> "As the term is generally understood the 'practice of the law' is the doing or performing services in a court of justice, in any matter depending therein, throughout its various stages, and in conformity to the adopted rules of procedure. But in a larger sense it includes legal advice and counsel, and the preparation of legal instruments and contracts by which legal rights are secured, although such matter may or may not be depending in a court."

(See also, 61 Ops.Cal.Atty.Gen. 346, 350 (1978).)

A "neutral arbitrator" is defined in Code of Civil Procedure section 1280, subdivision (d), as one who is (1) selected jointly by the parties or by the arbitrators selected by the parties or (2) appointed by the court when the parties or the arbitrators selected by the parties fail to select an arbitrator who was to be selected jointly by them. The powers of a neutral arbitrator are prescribed

in sections 1282 to 1284.2 of said code.[4]  The statute contains no general restrictions as to who may serve in that capacity.  (Cf. <u>Robinson</u> v. <u>Superior Court</u> (1950) 35 Cal.2d 379, 387.)[5]

Nor is such an arbitrator, who neither undertakes to advocate or represent the position or cause of either party to the dispute,[6] nor purports to exercise or possess any sovereign power,

---

[4]Section 1282 provides:

"Unless the arbitration agreement otherwise provides, or unless the parties to the arbitration otherwise provide by an agreement which is not contrary to the arbitration agreement as made or as modified by all of the parties thereto:

"(a) The arbitration shall be by a single neutral arbitrator.

"(b) If there is more than one arbitrator, the powers and duties of the arbitrators, other than the powers and duties of a neutral arbitrator, may be exercised by a majority of them if reasonable notice of all proceedings has been given to all arbitrators.

"(c) If there is more than one neutral arbitrator:

"(1) The powers and duties of a neutral arbitrator may be exercised by a majority of the neutral arbitrators.

"(2) By unanimous agreement of the neutral arbitrators, such powers and duties may be delegated to one of their number but the power to make or correct the award may not be so delegated.

"(d) If there is no neutral arbitrator, the powers and duties of a neutral arbitrator may be exercised by a majority of the arbitrators."

[5]Of course, certain conduct of an arbitrator may result in disqualification.  (Pen. Code, §§ 93, 96, 98.)

[6]Such agreements which are the subject of the present inquiry typically provide that the neutral intermediaries "will not represent either party in any professional relationship"; that "comments by conciliators will not be understood to constitute legal advice"; that "conciliators shall act without any special license or particular level of training or expertise in the application of legal or other principles."

license, authority or prerogative, engaged in the practice of law.[7]  "Law" is the solemn expression of the will of the supreme power of the state as expressed by its constitution and statutes.  (Civ. Code, §§ 22, 22.1.)  So far as it is not repugnant to or inconsistent with the constitution or laws of this state, the common law of England is the "rule of decision" in all the courts of this state.  (Civ. Code, § 22.2; 66 Ops.Cal.Atty.Gen. 293, 295 (1983).)  It has been held, for purposes of the prohibition against unauthorized practice, that the term "law" in Business and Professions Code section 6125 includes the law of this state, of a sister state, of the United States, and of a foreign country.  (Bluestein v. State Bar (1974) 13 Cal.3d 162, 173-174.)  Nevertheless, it is clear that the term "law" refers to those rules of conduct which derive from the expression of a sovereign and duly constituted political authority for the governance of an organized jural society.  In our view, the contract in question for submission of a civil dispute to a third party for resolution according to a prescribed external doctrinal system does not constitute an agreement for the unauthorized practice of law.

We next consider whether a written agreement to submit such a dispute to arbitration is enforceable in a court of law.[8] This issue requires a specific consideration of the proper role of the civil courts in matters touching upon religious affairs.  Judicial involvement should not extend to such controversies in a manner which would require consideration of religious precepts.  (Presbyterian Church v. Hull Church (1969) 393 U.S. 440, 449; Serbian Orthodox Diocese v. Milijojevich (1976) 426 U.S. 696, 709; Jones v. Wolf (1979) 443 U.S. 595, 603.)  A court may, however, adopt a "neutral principles of law" approach to resolving religious disputes not entailing consideration of doctrinal matters; this approach contemplates judicial involvement based upon and limited to the application of objective principles of secular law.  (Id., 602-603.)

The approach of the California courts has been summarized in In re Metropolitan Baptist Church of Richmond, Inc. (1975) 48 Cal.App.3d 850, 858-859:

"To resolve the often delicate question of the First Amendment's application to disputes concerning church property, a principle of state 'neutrality' has developed. This concept has been described as the application of 'neutral principles of law, developed for use in all property disputes, which can be applied' without establishing 'religion, or prohibiting the free exercise thereof'; in applying these neutral principles civil courts must take care 'to decide church property disputes without resolving

_____

[7]In 61 Ops.Cal.Atty.Gen., supra, 351, we concluded that the tasks of a quasi-judicial officer "do not even remotely resemble the activities included in the definition of 'the practice of law'. . . Absent from them is any requirement that [they] advise, counsel, or represent members of the public with respect to their legal rights and obligations."

[8]A proceeding to compel arbitration is in essence an action in equity to compel specific performance of a contract.  (Freeman v. State Farm Mut. Auto. Ins. Co. (1975) 14 Cal.3d 473, 479; cf. Code Civ. Proc., § 1281.2.)

underlying controversies over religious doctrine.' (<u>Presbyterian Church</u> v. <u>Hull Church</u>, <u>supra</u>, 393 U.S. 440, 449 [21 L.Ed.2d 658, 665].)  A leading case on the subject is <u>Polen</u> v. <u>Cox</u>, 259 Md. 25 [267 A.2d 201], where the high court of Maryland stated (p. 30): 'The relevant inquiry must be whether the court can resolve the property dispute on the basis of neutral principles of law which do not involve the resolution <u>by</u> <u>the</u> <u>court</u> of ecclesiastical issues . . . .  [A]s long as the court does not have to resolve the doctrinal propriety [of a church's action] in order to determine who has legal control of the property, there is no unconstitutional intervention by the state in church affairs.'

"Where civil or <u>property</u> <u>rights</u> are involved the courts of this state have always, evenhandedly, accepted jurisdiction over property disputes, even where ecclesiastical questions may have been indirectly involved.  This rule was succinctly stated in <u>Providence Baptist Church</u> v. <u>Superior Ct.</u>, 40 Cal.2d 55, 60 [251 P.2d 10], in this manner:  [Emphasis in original.]  '<u>As</u> <u>long</u> <u>as</u> <u>civil or</u> <u>property</u> <u>rights</u> <u>are</u> <u>involved,</u> <u>the</u> <u>courts</u> <u>will</u> <u>entertain</u> <u>jurisdiction</u> <u>of</u> <u>controversies</u> <u>in religious</u> <u>bodies</u> <u>although</u> <u>some</u> <u>ecclesiastical matters</u> <u>are</u> <u>incidentally</u> <u>involved.</u>' [Emphasis added.] Earlier it was said in <u>Rosicrucian Fellow</u> v. <u>Rosicrucian etc. Ch.</u>, <u>supra</u>, 39 Cal.2d 121, 131: 'The general rule that courts will not interfere in religious societies with reference to their ecclesiastical practices stems from the separation of the church and state, but has always been qualified by the rule that civil and property rights would be adjudicated."

And see <u>Samoan Congreg. etc. in U.S.</u> v. <u>Samoan Congreg. etc. of Oceanside</u> (1977) 66 Cal.App.3d 69, 75-76.  This approach is consistent with the "neutral principles of law" approach in <u>Jones</u> v. <u>Wolf</u>, <u>supra</u>, 443 U.S. at 602-603.

The present inquiry does not concern a dispute between religious bodies, but between members of a religious body who have agreed to submit their civil dispute for resolution according to the tenets of that organization. The principles set forth in the federal and state cases cited above were applied in an analogous context in <u>Avitzur</u> v. <u>Avitzur</u> (N.Y. 1983) 446 N.E.2d 136, 58 N.Y.2d 108. There, husband and wife were married, consistent with the laws of the State of New York, in a ceremony conducted in accordance with Jewish tradition.  In connection therewith the parties executed an antenuptial agreement known as a "Ketubah" under the terms of which they agreed to recognize the Beth Din of the Rabbinical Assembly as having authority to summon either party at the request of the other for the purpose of allowing that tribunal to advise and counsel the parties in matters concerning the Jewish law of marriage, including the granting of a divorce ("Get"). Thereafter, the husband obtained a civil decree of divorce but refused to appear, as requested, before the Beth Din, thus preventing the wife from securing a Get and from entering a remarriage pursuant to Jewish law.

The court held that the wife's action in specific performance to compel the husband to appear before and accept the decision of the Beth Din was not an attempt to enforce a religious

practice arising solely out of principles of religious law. (446 N.E.2d at 138.) The court explained (id., 138-139):

> "Viewed in this manner, the provisions of the Ketubah relied upon by plaintiff constitute nothing more than an agreement to refer the matter of a religious divorce to a nonjudicial forum. Thus, the contractual obligation plaintiff seeks to enforce is closely analogous to an antenuptial agreement to arbitrate a dispute in accordance with the law and tradition chosen by the parties. There can be little doubt that a duly executed antenuptial agreement, by which the parties agree in advance of the marriage to the resolution of disputes that may arise after its termination, is valid
>
> and enforceable . . .
>
> "Similarly, that the obligations undertaken by the parties to the Ketubah are grounded in religious belief and practice does not preclude enforcement of its secular terms. Nor does the fact that all of the Ketubah's provisions may not be judicially recognized prevent the court from enforcing that portion of the agreement by which the parties promised to refer their disputes to a nonjudicial forum (see Ferro v. Bologna, 31 N.Y.2d 30, 36, 334 N.Y.S.2d 856, 286 N.E.2d 244). The courts may properly enforce so much of this agreement as is not in contravention of law or public policy.
>
> "In short, the relief sought by plaintiff in this action is simply to compel defendant to perform a secular obligation to which he contractually bound himself. In this regard, no doctrinal issue need be passed upon, no implementation of a religious duty is contemplated, and no interference with religious authority will result. Certainly nothing the Beth Din can do would in any way affect the civil divorce. To the extent that an enforceable promise can be found by the application of neutral principles of contract law, plaintiff will have demonstrated entitlement to the relief sought. Consideration of other substantive issues bearing upon plaintiff's entitlement to a religious divorce, however, is appropriately left to the forum the parties chose for resolving the matter."

In Avitzur, the court expressed the view that the Ketubah should ordinarily be entitled to no less dignity than any other civil contract to submit a dispute to a nonjudicial forum, so long as its enforcement violates neither the law nor the public policy of the state. (Id., 138; Minkin v. Minkin (N.J. 1981) 434 A.2d 665, 180 N.J. Super. 260.)

The arbitration agreement which is the subject of our consideration concerns a purely civil matter, i.e., a justiciable controversy, such as a dispute as to the ownership of a chattel. This agreement provides for the submission of the dispute for determination by a private, neutral third party. The policy of the law favors this expedient means of dispute resolution. Further, the agreement may prescribe the rules or basis for decision, which may encompass religious doctrine. With respect to an order of a court to comply with an agreement to submit such a dispute to arbitration by any party freely designated by the disputants, including a religious tribunal, and according to their chosen and comprehensive ecclesiastical ordinances, "no doctrinal issue need be

passed upon, no implementation of a religious duty is contemplated, and no interference with religious authority will result." (See, <u>Avitzur</u> v. <u>Avitzur</u>, <u>supra</u>, 139.) It is concluded therefore that a provision of such a written contract, which does not otherwise violate the law or the public policy of the state, to submit a dispute arising thereunder to arbitration, is judicially enforceable.

* * * * *